UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK A. THOMPSON,

        Plaintiff,

        v.                                       **DECISION AND ORDER**
                                                                          17-CV-549S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Patrick A. Thompson challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since February 15, 2012, due to back problems,[1] a fused ankle, obesity, depression, and affective disorder, and thus, he is entitled to disability benefits under the Act.

        2.        Plaintiff filed an application for disability benefits and supplemental security income on May 16, 2013, which the Commissioner denied on August 14, 2013. Plaintiff thereafter requested a hearing before an ALJ on August 29, 2013. On April 30, 2015, ALJ Sharon Seeley held a hearing at which Plaintiff appeared with counsel and testified. At the time of the hearing, Plaintiff was 51 years old, with a 12th grade education, and past work experience as a machine operator and a laborer for a flooring company. The ALJ considered the case *de novo* and, on February 22, 2016, issued a written decision denying Plaintiff's application for benefits. Plaintiff appealed to the Appeals Council and submitted an additional 130 pages of medical records. The Appeals Council denied

---

[1] The ALJ found Plaintiff to have L5-S1 disc herniation with radiculopathy.

Plaintiff's request for review on May 25, 2017.  Plaintiff filed the current action on June 16, 2017, challenging the Commissioner's final decision.[2]

3. On March 6, 2018, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 16).  On March 27, 2018, the Commissioner filed a Motion for Judgment on the Pleadings.  (Docket No. 19).  The Court thereafter took the matter under advisement without oral argument.  For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[2] The ALJ's February 22, 2016 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

also include that which detracts from its weight." <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the

3

> fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since February 15, 2012, the alleged onset date (R. at 146);[3] (2) Plaintiff's back issues and fused ankle are serious impairments within the meaning of the Act (R. at 146); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 148); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a less than full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain

---

[3] Citations to the underlying administrative record are designated as "R."

exceptions (R. at 149); (5) Plaintiff could not perform her past relevant work (R. at 155); and (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 155). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period—February 15, 2012, through February 22, 2016. (R. at 156).

10. Plaintiff raises two challenges to the Commissioner's final determination. First, he argues that the Appeals Council failed to properly consider medical documentation that he submitted after the ALJ's decision. Second, he argues that the ALJ's decision is not supported by substantial evidence.

11. After the ALJ decision, Plaintiff submitted approximately 130 pages of medical records to the Appeals Council for review. (R. at 8-140.) The Appeals Council considered this evidence and found that it did not show a "reasonable probability that it would change the outcome of the decision." (R. at 2.) It therefore denied Plaintiff's request to review the ALJ's decision. (R. at 1.)

12. The Appeals Council will review a case, *inter alia*, if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470 (a)(5). "Evidence is material if it is (i) relevant to the time period for which benefits have been denied and (ii) probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." McIntire v. Astrue, 809 F. Supp. 2d 13, 21 (D. Conn. 2010). New evidence submitted to the Appeals Council

5

following an ALJ hearing becomes part of the administrative record for judicial review. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).

13. Plaintiff argues that the Appeals Council erred in its treatment of the new evidence. He does not, however, explain how or why the Appeals Council erred. He simply argues that "[a]t the very least, the matter should have been remanded for further proceedings in light of the 150 pages worth of evidence, particularly the evidence from Dr. Fast regarding the severe carotid artery stenosis and from Nurse Practitioner Ventry and Dr. Rajendran concerning Plaintiff's ongoing pain and psychological issues." (Docket No. 16-1, p. 4.)

14. The Appeals Council will review a case on the basis of new evidence only if it is material, as noted above. Here, it did not make such a finding, but instead, determined that the evidence would not have changed the outcome of the case before the ALJ. Plaintiff identifies no specific error in this assessment, nor does he explain how the medical records he identifies would have changed the outcome of the ALJ proceedings. The sheer volume of records alone does not require remand, and it is not this Court's obligation to sift through these records unaided by counsel. Cf. Cork v. Berryhill, No. 3:17-CV-0371-N-BK, 2018 WL 1801664, at *3 (N.D.Tx. Mar. 15, 2018) (applying the summary-judgment rule that "[t]he Court is not under any obligation to probe the record to find supporting evidence for one side or the other" to review of final decisions by the Commissioner of Social Security). Plaintiff's first argument is therefore rejected.[4]

---

[4] Plaintiff also suggests that remand may be warranted on the basis that he received ineffective assistance of counsel, but he does not sufficiently develop that argument for this Court's consideration. (See Docket No. 16-1, p. 4.)

15. Plaintiff next argues that the ALJ's decision is not supported by substantial evidence. He first maintains that the ALJ erred by finding that only his disc herniation and left ankle fusion constituted severe limitations at Step 2. (R. at 146.) In Plaintiff's view, "[t]here was evidence before [the ALJ] from Dr. Fast indicating Plaintiff's severe carotid artery stenosis with one procedure performed and a second one pending, which does not even receive a passing reference from [the ALJ] in her decision, even to discount it." (Docket No. 16-1, p. 4.)

16. The ALJ, of course, is not required to specifically discuss every piece of medical evidence in the record. See Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "[a]n ALJ does not have to state on record every reason justifying a decision" and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered") (internal quotations omitted). Here, the ALJ considered Plaintiff's stroke in October 2014, to which Dr. Fast's records pertain, and found that it did not rise to the level of a severe impairment. (R. at 147.) The failure to specifically mention Dr. Fast's records is not reversible error. See id. Moreover, Plaintiff makes no showing that the ALJ's consideration of the effects of his stroke is not supported by substantial evidence. Rather, Plaintiff simply takes a different view of the evidence. A different view of the evidence, however, is not a basis for reversal. See Garcia v. Comm'r of Soc. Sec., No. 1:16 CV 2682, 2018 WL 838371, at *16 (N.D. Ohio Feb. 12, 2018) ("Although Plaintiff argues the ALJ 'cherry-picked' the record, Plaintiff's argument ultimately represents a different view of the evidence but does not undermine the substantial evidence in support of the decision. And, even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot

7

overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." (citation omitted)). This argument is therefore rejected.

17. Plaintiff also argues that the ALJ erred at Step 2 by finding that his diabetes was "well controlled" and therefore not a severe limitation. (R. at 147.) In particular, Plaintiff complains that the ALJ found no evidence of neuropathy, when in fact the record contains evidence of peripheral neuropathy in Plaintiff's treatment notes. (R. at 147, 428, 501.) The evidence of neuropathy Plaintiff cites, however, is from before the relevant period. (R. at 428, 501.) But even aside from that, Plaintiff makes no showing that his peripheral neuropathy, assuming it existed during the relevant period, caused more than a minimal limitation in his ability to perform basic work functions. He also fails to identify any specific error in the ALJ's conclusion that his diabetes was well controlled and that he suffered no recent or recurrent diabetic decompensation. (R. at 147.) This argument is therefore also rejected.

18. Next, Plaintiff maintains that the ALJ should have relied on Dr. Rajendran to find that his psychological impairments were severe. He faults the ALJ for relying "almost solely on a psychiatric consultative examination performed three years prior to the hearing, which [did] not include the longitudinal history supplied by Dr. Rajendran." (Docket No. 16-1, p. 5.) The ALJ did indeed rely on the consultative examination of Dr. Fabiano, whose opinions were corroborated by Dr. Totin. (R. at 147-48, 154.) Other than generalizing that he views Dr. Rajendran's treatment notes as reflecting "severe problems with depression and anxiety," Plaintiff does not point to any finding by Dr. Rajendran that would support the conclusion that his psychological condition caused more than a minimal limitation in his ability to perform basic work functions. Dr. Rajendran, in fact, found

8

Plaintiff to be "pleasant and cooperative" but overwhelmed by family problems. (R. at 1326-1339.) Nowhere does Dr. Rajendran opine that Plaintiff's family problems affected his psychological state to such degree that it would constitute a severe impairment. Consequently, Plaintiff's argument fails.

19. Finally, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because it does not account for his inability to use his right arm on account of his carpal tunnel syndrome and neuropathy. Plaintiff insists that he cannot use his right arm for opening jars or handling buttons or zippers. (Docket No. 16-1, p. 5.) The ALJ, however, found that Plaintiff's medically determinable impairments do not entirely support his statements concerning the intensity, persistence, and limiting effects of his symptoms. (R. at 150.) Plaintiff does not challenge this credibility determination or point to any objective medical evidence in the record in support of his contention that he is unable to use his right arm. Accordingly, this argument also fails.

20. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned arguments are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 19) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   August 23, 2018
         Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge